JOHNS H. CONGDON *et al. vs.* EDGAR G. WINSOR *et als.*

Under Pub. Stat. R. I. cap. 155, §§ 11, 12, which require manufacturing corporations to file with the town clerk of the town where their manufactory is situated annual certificates of their condition, otherwise the stockholders shall be liable for the corporate debts, filing a certificate which is not in fact true does not relieve the stockholders from liability.

In an action against stockholders to hold them for the debts of the corporation, under Pub. Stat. R. I. cap. 155, evidence is admissible to prove the date at which the corporation contracted its debt to the plaintiff.

In such an action the statements of .the treasurer as to the issue of stock to the defendants are admissible as evidence when no stock-book was produced, and none found among the books turned over to the receiver of the corporation.

In such an action a record-book of the corporation was produced, made up in part by copies from slips of paper on which the minutes of the corporation meetings, including the signatures of the secretaries, were originally written.

*Held,* that the book was admissible in evidence. The record, though irregular, was accepted and regarded by the corporation as its record, and good at least as secondary evidence.

DEFENDANTS' petition for a new trial.

This action was debt on judgment brought by the plaintiffs, co-partners as Congdon, Carpenter & Co., against the defendants as stockholders in the Sheldon Gas Stove Company, pursuant to Pub. Stat. R. I. cap. 155, § 22, on a judgment recovered against the Sheldon Gas Stove Company. The stockholders were charged, owing to the failure of the corporation to file its annual certificates. The action was brought in the Court of Common Pleas, and after verdict for the plaintiffs and judgment thereon, this petition was filed, on the ground that the presiding justice erred in matters of law, and that the verdict was against the evidence.

*February* 7, 1891. STINESS, J. The plaintiffs seek to enforce the liability of the defendants, as stockholders of the Sheldon Gas Stove Company, under the provisions of Pub. Stat. R. I. cap. 155.

The numerous exceptions taken at the trial have been grouped by the defendants, in their brief, into six grounds for a new trial.

I. The question is raised whether evidence was admissible to prove the date at which the corporation contracted its debt with the plaintiffs, or whether this can only be proved by the judgment against the corporation. We think the evidence was admissible. The statute provides that if a company shall fail to file the required certificate, the stockholders shall be liable for all debts of the com-

pany " then existing." The time of the existence of the debt is therefore a material inquiry, which would neither be answered by the date of the judgment, nor, ordinarily, by its contents. The cases relied upon by the defendants in their citation of Field on Corporations, §§ 74, 75, sustain this view. In *Larabee* v. *Baldwin*, 35 Cal. 155, it was held that as a stockholder was not liable for debts created before he became a stockholder, the mere proof of a judgment against the corporation, " nothing whatever in the testimony tending to show when the indebtedness sued on was contracted, and consequently, nothing to show whether it was contracted while the several defendants were stockholders or not," did not show that the defendants were liable. The court remarks : " The judgment against the corporation goes for nothing without other evidence to show when the debts, upon which the recovery was had, were contracted." See, also, *Davidson* v. *Rankin*, 34 Cal. 503.

II. Defendants objected to certain evidence relating to ownership of stock. They say it appeared, inferentially, that the corporation kept a stock-book or record of its stockholders ; and hence, such record being the best evidence of ownership of stock, they objected to other evidence, consisting of statements of witnesses as to such ownership and admissions by parties to the suit as to their individual holding. No stock-book was found among those turned over to the receiver of the corporation. We are not referred to particular statements in the voluminous record which were objectionable, and have only noted those made by the treasurer of the company as to the issue of stock to the defendants. We think the statements were admissible. In the absence of the stock-book, the treasurer was certainly a competent witness to the fact that he issued certificates of stock to the defendants, his statement being open to denial on the part of the defendants, if it were not true. This point, however, is of little consequence, in view of the fact that all of the petitioning defendants, except Ballou, admitted at the trial their ownership of stock to the extent found by the jury ; and Ballou, one of the directors of the company, was charged with only one share, because the number of shares issued to him was not definitely shown. The testimony was sufficient to establish, *primâ facie*, an ownership to this extent. This being an action against

the defendants, as individuals, their admissions of fact are admissible upon the same grounds as admissions of parties in any action. *Dows* v. *Naper*, 91 Ill. 44. It is urged that each stockholder has a motive to lower the number of shares held by him, and so his answer is liable to prejudice his codefendants. We do not see the force of this reason. Each stockholder is jointly and severally liable for the debts of the corporation, but only to an amount not exceeding the par value of his stock, after its capital has been fully paid. The lowering of one man's proportion of the stock does not increase another man's liability ; and where one has paid more than his proportion of a corporate debt, he has his remedy for contribution from the other stockholders, when their just proportion may be determined.

III. The introduction of a book, purporting to be a record-book of the corporation, was objected to. It was offered for the purpose of showing that the defendants were stockholders, and this was in the line of proof demanded by them. But the objection was, that it was not a proper record-book of the corporation, because it was a copy of slips of paper on which the minutes of meetings, including the signatures of secretaries, were originally made. Some entries in the book had been so copied by the book-keeper, who identified them, from slips handed to her by the manager of the company, while other entries were duly authenticated by the signature of the secretary, who has since died. There can be no doubt that the method adopted for keeping the record of meetings was irregular and improper ; nevertheless, if this was the way in which it was kept, and it was accepted and regarded by the company as its record, which is a reasonable inference from putting the copies in a proper book and continuing them by duly attested minutes of the secretary, we think the book was admissible as evidence. As it was sworn that the book contained correct copies from the slips, it was, at least, admissible as secondary evidence.

IV. The sixth ground of exception presents the gist of the case. The defendants requested the court to charge that, if the jury should find that the certificates presented in evidence by the plaintiffs were actually filed in the office of the city clerk, there was no liability under Pub. Stat. R. I. cap. 155, §§ 11, 12. Section 11 requires every manufacturing company to file a certificate annually in Feb-

ruary, truly stating the amount of its capital stock actually paid
in, together with the assessed value of its real estate, the value of
its personal assets, and the amount of its debts on the thirty-first
day of December of the year next preceding. Section 12 im-
poses the liability for a failure to do this. The plaintiffs' conten-
tion at the trial was, that the certificates filed did not truly state
the facts required to be stated; and the special finding of the
jury was, that the liability of the defendants accrued by reason
of the failure of the corporation to file the annual certificates re-
quired by law. The question then comes whether stockholders
are exempted from liability when a certificate is filed, if the certi-
ficate is not, in fact, true. In *Stedman* v. *Eveleth*, 6 Metc. 114,
under a statute which required the officers of a manufacturing com-
pany to file a certificate stating the amount of the capital fixed and
paid in, it was held that a certificate so filed was conclusive evi-
dence for the stockholders of the fact so stated, so far as to exempt
them from personal liability for subsequent debts, even though the
capital stock had not been fully paid. The defendants rely on this
case as authority for their exemption from liability, by the filing of
a certificate, irrespective of the question of its truth. The plaintiffs
contend that our statute differs from the Massachusetts statute,
because it uses the words "truly stating;" thus making the truth
of the statement an essential inquiry. Whatever may have been
the intention in using the word "truly," we do not see that it is a
material addition to the requirement of the statute. We see no
substantial difference between a direction to state and to truly state.
To state the condition of a company cannot mean anything else
than to state it as it is. A certificate which sets forth what it is
not neither states, nor truly states, the condition. In this case, it
was found, the company did not file a true statement of the facts
required to be stated in the annual certificate. Is the filing of a
false certificate sufficient? To hold it to be sufficient would defeat
an evident purpose of the statute, to give information to creditors
of the affairs of the company. It would also put a premium upon
falsehood, for it would declare the law to be this: If officers of a
company say nothing, but leave creditors to ascertain its standing
by inquiry, the stockholders are liable for the debts; but if they
put a lie upon record and so deceive creditors, the stockholders are

exempt. We cannot accept such a doctrine. The conclusion reached in *Stedman* v. *Eveleth* was based upon the construction that the act was intended as well for the protection of stockholders as creditors; and that in no other way could any protection be given to stockholders. In commenting upon that case in *Barre Nat. Bank* v. *Hingham Manuf. Co.* 127 Mass. 563, the court points out the fact that, since that decision, the law has been changed, so as to limit the liability of each stockholder, with reference to the payment of capital stock, to the unpaid portion of the par value of his stock; whereas, before, he was liable for all the debts of the company. The court then says: " This provision for the liability of stockholders is simple and direct, and not coupled with any provision as to the certificate, such as was contained in the Rev. Stat. cap. 38; and the reasoning which led the court to its decision in *Stedman* v. *Eveleth* does not apply here." Our statute has a provision similar to that of the later law in Massachusetts.

With reference to this question we may well adopt the language of Shaw, C. J., in the earlier case of *Mill Dam Foundry* v. *Hovey*, 21 Pick. 417, 455 ; " We are of opinion that the defendant was liable as a member on the ground that the corporation had not annually published the statements required by the act. The act is explicit, that they shall publish annually the amount of all assessments voted and actually paid in, and the amount of all existing debts. The manifest object was to enable the public to judge, from time to time, of the condition of such corporation, by enabling them, at one view, to compare the capital with the debts." In that case the notices published contained no statement of the capital stock. But, as we have said, we see no reason why this should be worse for the stockholder than putting forth a false statement. We think, therefore, that the question of the truth of the statement was properly left to the jury, upon the ground that an untrue statement is not a statement of the affairs of the company, within the meaning of the statute.

V. In the fourth ground of exception the request to charge was substantially complied with, and the fifth relates to liability under section 1, which was not found by the jury, and so is no ground for a new trial.

VI. After a careful examination of the evidence, we do not

think the verdict should be set aside as unwarranted and, therefore, upon the several grounds presented, the petition for a new trial is denied. · *Petition dismissed.*

*Robert W. Burbank,* for plaintiffs.

*Edward D. Bassett, Edwin Aldrich, Dexter B. Potter, Daniel R. Ballou* & *Frank H. Jackson,* for different defendants.