MONTSERRAT COAL COMPANY, *Appellant*, v. JOHNSON COUNTY COAL MINING COMPANY *et al.*

Division Two, October 22, 1897.

**Multifarious Pleading.** Plaintiff brought suit against the defendant corporation, alleging its insolvency and a former judgment of $60,000, and prayed that the other defendants, being stockholders of said company, be decreed to pay $95 per share on each share of stock owned by them, respectively, because they had never paid but $5 on each share of their stock, and also prayed for $10,000 against the president of the company for money wrongfully appropriated by him, and for a judgment against the president for whatever balance of said $60,000 should be unpaid after the other two sources should be exhausted, for waste and wanton destruction of the mine which said company had leased from plaintiff. *Held* to be multifarious, and a demurrer to the petition was properly sustained.

*Appeal from Johnson Circuit Court.*

AFFIRMED.

*A. & J. F. Lee* for appellant.

(1) There is no defect of parties plaintiff. *Williams v. Jones*, 23 Mo. App. 147; 1 Daniel's Ch. Pl. and Pr. [1871 Ed.], p. 235, 275, 1935; *Bank v. Bank*, 107 Mo. 133. (2) There is no misjoinder or multifariousness. *Campbell v. Mackay*, 1 Myl. & C. 603; *Garries v. Chew*, 2 How. 642; *Brown v. Guarantee Co.*, 128 U. S. 410;

*Graham v. Bahlonaga Co.*, 71 Ga. 296; Story, Eq. Pl. [1892 Ed.], sec. 278a, 277, 271; *Snyder v. Cahill*, 29 W. Va. 48; *Comstock v. Rayford*, 1 Smed. & M. (Miss.) 423; *State v. Brown*, 58 Miss. 535; *Graves v. Corbin*, 132 U. S. 571; Foster's Fed. Pr. [1892 Ed.], sec. 75; *Sims v. Adams*, 78 Ala. 395; *Rogers v. Blackwell*, 49 Mich. 192; Beach, Mod. Eq. Pr. [1896 Ed.], sec. 129; *Parrish v. Sloan*, 3 Ired. Eq. 611, approved in *Donovan v. Dunning*, 69 Mo. 436; *Neill & Rathel*, 70 Md. 592; Pomeroy, Remedies and Remedial Rights [1876 Ed.], secs. 452–462, p. 486; *Hudson v. Pietz*, 11 Paige (N. Y.), 180.

*A. W. Rogers* and *S. T. White* for respondents.

(1) The bill is multifarious. The allegations that balances of stock are owing by the several defendants; and the allegation that James A. Hill had caused the Johnson County Coal Mining Company certain damages by his misconduct as president; and the allegation that he as president received certain sums as salary that he should not have received, set out wholly distinct transactions against different persons in different capacities, and no evidence tending to prove or disprove one set of allegations would tend to prove or disprove any of the others; and a decree upon one of these issues would have no point of contact with a decree upon any other of the issues. Bliss, Code Pleadings, sec. 110; *Thornton v. Irwin*, 43 Mo. 153; *Clark v. Ins. Co.*, 52 Mo. 272; *Bobb v. Bobb*, 8 Mo. App. 257; *Mullen v. Hewitt*, 103 Mo. 639; *Lewarne v. Mexican International Co.*, 38 Fed. Rep. 629; *West v. Randall*, 2 Mason, 181. The point is directly decided in Massachusetts in *Cambridge Waterworks v. Somerville Dyeing and Bleaching Co.*, 14 Gray, 193; *Pope v. Leonard*, 115 Mass. 286; *Bank v. Hingham Manufacturing Co.*, 127 Mass. 563.

GANTT, P. J.—This is an appeal from a final judgment on demurrer. The petition, omitting caption, is in the words and figures following: "Plaintiff states that it brings this suit on its own behalf and on behalf of any other unsatisfied creditor of the defendant, the Johnson County Coal Mining Company, who shall come in under this suit and contribute to the expenses and costs thereof; plaintiff states that it and said defendant, the Missouri Pacific Railway Company, are corporations duly incorporated under the laws of the State of Missouri, and were such corporations at all the times hereinafter mentioned, and states that on the seventh day of October, 1888, this plaintiff recovered in this court a judgment in its own favor against the defendant, said mining company, for the sum of sixty thousand dollars, which said judgment bore interest at the rate of six per cent per annum from the date of its rendition; that an execution was duly sued out upon said judgment, and under said execution the sheriff for the county of Johnson did collect and apply to the payment of said judgment the sum of $480.51, in various sums, on or about the fourth day of April, 1889, and as to said judgment and the residue of the interest thereon remaining unpaid, said executions were returned unsatisfied by said sheriff by reason of his inability to find property of said defendant mining company out of which to satisfy the same, and there is now no property or assets of said mining company subject to execution at law. Plaintiff states that said mining company is a corporation incorporated under the laws of the State of Missouri prior to the first day of April, 1882, and thenceforward conducted a coal mining business in said county of Johnson until some time after said seventeenth day of October, 1888. That on or about the first day of April, 1889, said defendant

ceased to do any business and has not since transacted any business. That at said date and ever since the capital stock of said mining company consisted of two hundred and fifty shares of the par value of one hundred dollars each, upon each of which said shares there have been paid five dollars only, leaving unpaid on each share ninety-five dollars; that at all times between this date and said seventeenth day of October the following named defendants have been the owners of the capital stock of said mining company, as follows: Said defendant, James A. Hill, 154 shares; said defendant, William S. Hill, 10 shares; said defendant, Missouri Pacific Railway Company, 79 shares; said defendant, McDowell, 1 share; said defendant, Thomas H. Boyd, 5 shares; and said defendant, Alexander Speers, 1 share. Plaintiff states that no call was ever made by the defendant mining company for any part of said unpaid portion of its capital stock; that if, under the decree of this court herein, the defendants pay the whole of said portion of said unpaid stock the same would be insufficient to pay plaintiff's claim against said defendant mining company as above mentioned in full; that said defendant mining company is hopelessly insolvent, without any property or effects except as herein stated; that the above named defendants, James A. Hill, William S. Hill, and Robert M. McDowell, constitute the board of directors of said mining company; that said defendant, James A. Hill, is the president of the same. That said James A. Hill is further indebted to said mining company in the sum of ten thousand dollars for sums of money taken by him from the assets of said company and appropriated to his own use at different dates, and in different amounts to this plaintiff unknown, but within five years before the rendition of said judgment, and which said sums said Hill claimed to take as salary due him

by said company for services alleged to have been performed by him as president, when in fact such services as were performed by said Hill to said defendant mining company were of no value, as said Hill at the time of taking each of said sums well knew, and said sums so taken by him remain and still are due from him to said company.

"Plaintiff further states that there is due said mining company from said Hill the amount of said judgment above stated to have been rendered in favor of plaintiff against said mining company; and plaintiff states that on the first day of August, 1882, plaintiff was, and at all times thereafter until said October 17, 1888, remained, the owner of a certain tract of land with the appurtenances situated in the county of Johnson and State of Missouri, to wit: The east half of the northwest quarter and the west half of the northeast quarter, and ten acres taken in a square in the southwest corner of the northeast quarter of the northeast quarter, and ten acres taken in a square in the northwest corner of the southeast quarter of the northeast quarter; all in section 19, township 46, range 24; also, the northwest quarter of the northwest quarter of section 19 in said township and range; also all of a certain tract of land, beginning at a point on the west line of section 18 in said township and range, fifty feet south of the center line of the Missouri Pacific Railway track; thence south along the west line of said section 18, eighty poles and sixteen links to the southwest corner of said section; thence along the south line of said section, two hundred and fifty-one poles to the southeast corner of the southwest quarter of the southeast quarter of said section last mentioned; thence north thirty-six poles and eighteen links to a stake fifty feet south of the center line of the Missouri Pacific Railway tracks; thence northwestwardly along

the south line of said railway within fifty feet of the center of the same to the point of beginning; and the east half of section 13, township 46, range 25; on which said tract of land there is a coal mine, the property of plaintiff. That on said first day of April, 1882, said plaintiff leased for the term of five years to said defendant mining company said land and mine, with the appurtenances thereto, and said defendant mining company entered into possession of said land and mine, and thereafter this plaintiff instituted its suit in this court against said defendant mining company to recover damages of said defendant mining company for the wanton waste of said mine and property by said defendant mining company, its officers and agents; and such proceedings were had in said case that said judgment above mentioned was rendered in favor of the plaintiff, whereby it was determined that the wanton waste had been committed by said defendant mining company, its officers and agents, and in consequence thereof said judgment for said sum of $60,000 was rendered against said defendant mining company, in favor of said plaintiff; that at said trial plaintiff undertook to prove, and said defendant mining company attempted to disprove, the fact that said waste was committed wantonly by said James A. Hill, acting as the president of said defendant mining company, and it was by said judgment determined that said waste was by said Hill committed, and was committed wantonly, acting as the president of said defendant mining company; that said defendant James A. Hill assisted said defendant mining company in making its defense to the suit above mentioned, and took part in the trial of said case and was present thereat, and should not therefore be now heard to question the facts established by said judgment as above set forth.

"Therefore plaintiff asks that the defendants herein may be decreed to pay to plaintiff and the other creditors of said defendant mining company, who may come in and prove their claims in this suit, the full amount of ninety-five dollars per share on each share of stock above stated to have been owned by them or upon which they may be found liable to pay the same; and further, that said defendant Hill may be ordered to pay to plaintiff, and to such other creditors, said amount of $10,000 above stated to have been withdrawn by him; and further, said sum of $60,000, and the unpaid interest thereon, or so much thereof as may be needed to satisfy in full said judgment and interest and costs of this proceeding; and plaintiff further asks for all other orders, decrees, and process which may be necessary to collect such sums as may be decreed against said defendants; and for all other relief in the premises which may seem to the court just and proper."

This petition was filed in Johnson county, Missouri, and writs issued returnable to the next term of said court. The defendant James A. Hill was served with the writ in the city of St. Louis.

It was insisted by defendant James A. Hill that said court had no jurisdiction to try the allegations charging him as president of the company with waste and with misappropriation of funds, unless said causes of action against him as president were properly united with the claim made against the other defendants for the unpaid balances on their subscriptions for stock. The demurrer is in these words:

"And now at this day comes James A. Hill, one of the defendants herein, for purpose of this demurrer only and not for the purpose of subjecting himself to the general jurisdiction of this court, for the reason that this court has no jurisdiction to determine any

question of his liability as president or other officer of this defendant corporation, and demurs to plaintiff's petition for the following reasons:

"*First.* Because there is a misjoinder in the parties defendant in this, that this defendant as president of the Johnson County Coal Mining Company is sought to be charged jointly with the other defendants as stockholders in said corporation between whom there is no joint liability alleged.

"*Second.* Because there is a misjoinder of causes of action in one and the same count, and the bill is multifarious in this, and it seeks to charge this defendant with acts done officially as president of said defendant corporation and to collect the outstanding indebtedness of stockholders of the last aforesaid corporation in one and the same action."

The court below held that the separate causes of action set out were not properly united in the bill and for that reason sustained the demurrer. The plaintiff, as already stated, appealed from that decision.

I. The sole question presented by this record is the propriety of the judgment of the circuit court holding the petition multifarious and sustaining the demurrer. In the leading case of *Campbell v. Mackay*, 1 Myl. and C. 603, 13 Condensed Eng. Chcy. Repts. 543, Lord COTTENHAM, after reviewing the English cases, remarked that "to lay down any rule applicable universally, or to say what constitutes multifariousness as an abstract proposition, is, upon the authorities, impossible." The decided cases since his lordship's day do not render the solution of the question any the less difficult. Indeed, no rule of equity pleading has less of certainty and uniformity in its application; a result, doubtless owing to the variety of degrees of right and interest which enter into the affairs of life. The general definition given by this court in *Clark et al. v. Ins. Co.*, 52 Mo.

272, is as accurate as any to be found in the books: "A bill is said to be multifarious when distinct and independent matters are improperly joined whereby they are confounded, as the writing in one bill of several matters perfectly distinct and unconnected against one defendant, or the demand of several matters of a distinct and independent nature against several defendants in the same bill." In *Gaines v. Chew*, 2 How. (U. S.) 619, the court say: "In general terms a bill is said to be multifarious which seeks to enforce against different individuals demands which are wholly disconnected." The rule is best illustrated by the cases themselves. Thus, in *Harrison v. Hogg*, 2 Ves. Jun. 323, the plaintiffs endeavored to unite in one record a demand in which all the plaintiffs jointly had an interest with a demand in which only one of them had an interest, and the demurrer was sustained on the ground that the subject-matters ought not to be joined in one suit. In *Saxton v. Davis*, 18 Ves. 72, the bill prayed for an accounting against the representative of a bankrupt's assignees, and against Davis, claiming through said assignees, and also against a person who had been his assignee under the insolvent debtor's act, and it was held multifarious. On the other hand it has been held by this court and many others that several judgment creditors may join in one common bill against their common debtor and his grantees to cancel conveyances alleged in the bill to have been fraudulently made to defeat said creditors, on the ground that the fraud equally affects all the plaintiffs, giving them a right to join, and all the defendants are implicated in it though in different degrees and proportions, though perhaps as to different properties. *Bobb v. Bobb*, 76 Mo. 419. "One general right is claimed by the bill against one common debtor growing out of his fraud and the further charge of connivance and collusion by each grantee,

with the common fraudulent grantor, in aid of the fraud, though each took a distinct tract." *Donovan v. Dunning*, 69 Mo. 436. These cases perhaps sufficiently indicate the general tendency of the courts of chancery.

Let us analyze the present bill. It avers the rendition of a judgment against the Johnson County Coal Company, a corporation organized under the laws of Missouri, for $60,000; the issuance of an execution and the collection thereby of $480.51 and a *nulla bona* return as to the balance of the judgment. It then proceeds to charge, *first*, that the capital stock of said corporation consisted of two hundred and fifty shares of the par value of $100 per share; that only $5 per share had ever been paid in by any of the stockholders, leaving $95 due on each share issued; that at the time of the commencement of the suit, defendant James A. Hill owned one hundred and fifty-four shares; William S. Hill, ten shares; the Missouri Pacific Railway Company, seventy-nine shares; McDowell, one share; Boyd, five shares; Speers, one share. That otherwise said corporation is insolvent. There is prayer that said stockholders be decreed to pay the full amount of $95 per share on each of their said shares. *Second*, there is then an averment that even if the stock is all paid up, there will not be enough to pay said judgment and then the bill proceeds to charge that said defendant James A. Hill is further indebted to said company in the sum of $10,000 for money taken by him as president from the assets of said company on a fraudulent claim of salary due him for services, which said Hill knew were of no value, and there is a prayer that said Hill individually be ordered to pay plaintiffs said $10,000 so fraudulently abstracted from the revenues of the company. *Third*, the bill further charges that the said judgment of $60,000 against the company was based upon the averment that said company, its officers and

agents, as the lessee of plaintiff, had by wanton waste damaged the mine and property of plaintiff to the amount of $60,000, and by said suit it was determined that said waste was committed by said mining company, its officers and agents, and on the trial it was proved that said James A. Hill, acting as president of the said company, had committed said waste, and said Hill was precluded by said judgment from denying said wanton waste so committed by him, and a prayer for judgment for said $60,000 or enough thereof to satisfy said judgment.

From the foregoing synopsis of the bill it is at once apparent that it embraces in one suit matters of distinct natures, necessitating distinct decrees, to wit, a claim against all the stockholders, of whom James A. Hill is one, for the balance due on their stock (upon the well settled principle that these unpaid subscriptions are assets of the company), with two other claims against James A. Hill alone for his own individual fraud in wrongfully converting $10,000 of the assets of the company as salary to himself, and wantonly wasting the mine of plaintiffs while acting as president. Certainly it can not be made plainer that the ground of liability of the several stockholders as such, Jas. A. Hill included, rests upon grounds wholly distinct from the liability of James A. Hill for fraudulent conversion of moneys of the company as and for salary and for his individual waste. The stockholders other than Hill have no common interest with him in defending his individual speculations or torts. Their liability depends upon facts wholly independent of the facts which must be established to sustain the charges against Jas. A. Hill, and the bill alleges distinct grounds of liability as to each. This bill finds its prototype in *Pope v. Leonard*, 115 Mass. 286. In that case judgment creditors filed a bill against the officers

and stockholders of a corporation organized under the laws of Massachusetts, General Statutes, chapter 61. They sought to hold the officers personally liable upon the ground that they had not filed the certificates required by the act of 1862, chapter 210, and also upon the ground that they signed the certificates knowing them to be false. They sought to hold the stockholders by the same bill on the ground that the capital was never fully paid in. The Supreme Court of Massachusetts held the bill multifarious, because it embraced in one suit distinct and independent matters against several parties who had no common interest in the distinct matter. There were two classes of defendants, officers and stockholders, and the grounds of liability of the officers were entirely different from that upon which they sought to hold the stockholders. To the same effect had been a previous decision of the same court in *Cambridge Water Works v. Dyeing Co.*, 14 Gray, 193. And the same doctrine was reiterated in *Bank v. Hingham Manufacturing Co.*, 127 Mass. 563, in which it was said: "If the claim against the directors as such were included in the same bill with the claim against them and others as stockholders, the bill would be multifarious." *Pope v. Leonard*, 115 Mass. 286; *Lewarne v. Mexican International Imp. Co.*, 38 Fed. Rep. 629.

It can not be said that there is a common right running through this bill against all the defendants. There is no charge of fraud against the stockholders as such. They are simply required to pay up their unpaid subscriptions, each for himself. Then there comes the distinct allegation of fraud on the part of the president in wrongfully taking $10,000 of the assets as and for his salary, and the other charge of waste by the corporation under the direction of the president.

Now there is not the slightest charge in the bill

that the stockholders other than James A. Hill, the president, were cognizant of his wrongful charge for salary or that they connived at and were parties to that transaction, nor is there the least pretense that the alleged wanton waste was committed by them.

These two last charges are as to them *res inter alios actae*, and render the bill multifarious. We find ample authority for holding the bill demurrable and no case which goes far enough to sustain so palpable a violation of the rule allowing the joinder of parties or separate matters.

The circuit court committed no error in sustaining the demurrer and its judgment is affirmed. SHERWOOD and BURGESS, JJ., concur.